United States District Court
Southern District of Texas
**ENTERED**
May 07, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **TRAVIS BLAKE HARDING,** § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-00034 |
| § | |
| **STATE FARM LLOYDS,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM & ORDER

This is first party insurance case brought by Plaintiff Travis Harding against Defendant State Farm Lloyds ("State Farm"). Before the Court are State Farm's Motion for Summary Judgment, ECF No. 15, and State Farm's Motion to Strike Plaintiff's Expert, ECF No. 17. On April 26, 2024, the Court held a hearing on the pending motions and took the matter under advisement. Minute Entry 04/26/2024. For the reasons that follow, the Court finds that the Motion to Strike should be **GRANTED**, and the Motion for Summary Judgment should be **GRANTED IN PART** and **DENIED IN PART**.

I.   BACKGROUND

On February 16, 2021, Plaintiff Travis Harding's home in Willis, Texas sustained serious water damage from burst pipes during Winter Storm Uri. Harding filed a claim with his insurer, State Farm, on February 18, 2021. Mills Decl. ¶ 5. State Farm acknowledge the claim the same day. ECF No. 16-3 at 31-32. Harding performed immediate mitigation work related to the water damage. Mills Decl. ¶ 7. On February 24, 2021, State Farm called Harding to gather information about his claim. *Id.*; ECF No. 16-3 at 27-28, 34-35. During that call, Harding indicated that the

1

storm had damaged some personal property in his garage. Mills Decl. ¶ 7. Immediately after the incident, Harding and his family spent two days in a hotel because the home was uninhabitable. Harding Dep. 42:23-24.

On or about March 12, 2021, Harding retained a public adjustor, Cheston Selz, to assess the damage to his property and to manage logistics related to his insurance claim. On March 21, 2021, State Farm performed an inspection of Harding's home. Mills Decl. ¶ 9. Following this inspection, State Farm finalized its estimate, which included repairs to numerous parts of the house. The total estimated repair cost was $21,395.28. *Id.* ¶ 11. After deducting $3,629.01 in depreciation and $2,382.00 for the deductible, the estimate yielded an actual cash value of $15,294.27. *Id.* On March 30, 2021, State Farm issued payment for $19,727.80, which included repair costs and reimbursements for Harding's initial mitigation efforts, along with a letter explaining the basis for the payment. *Id.*; ECF No. 16-3 at 40-41.

On May 1, 2021, Selz contacted State Farm and requested payment on Harding's behalf for additional living expenses ("ALE"). Mills Decl. ¶ 12. ALE benefits generally reimburse expenses like hotel costs when a home is uninhabitable and undergoing repairs related to a covered loss. The same day, State Farm sent a letter requesting Harding provide an invoice of all ALE costs and a list of personal property that had been damaged so that payment could be issued. *Id.*; ECF No. 16-3 at 73. Harding has yet to provide either. Harding Dep. 50:21-51:6, 83:15-85:11; Selz Dep. 124:10-23.

On May 7, 2021, Selz sent State Farm his estimate, which found that the repair costs would total $152,221.43. Mills Decl. ¶ 13; ECF No. 19-3. On May 14, 2021, State Farm performed a second investigation of the damage. Mills Decl. ¶ 14. State Farm revised is estimate total to be $27,504.77, which yielded an actual cash value of $20,211.04. *Id.* ¶ 15. State Farm issued a second

payment for $8,563.32 on May 24, 2021 to make up for the discrepancy in the two estimates and to pay Harding for additional mitigation costs. *Id.*; ECF No. 16-3 at 75-85. State Farm also issued a $300 payment for Mr. Harding's claim for loss of food during a power outage following the storm. ECF No. 16-3 at 75-85.

In June 2021, Harding hired FixAirx, a mold and environmental assessment company, to complete a water damage protocol. Harding Dep. 76:3-77:3. FixAirx's report found extensive water damage that "rendered the home uninhabitable." ECF No. 19-4 at 9. Harding has not yet hired anyone to help with the mold problem, but he has performed some remediation work himself. Harding Dep. 123:25-124:18.

On September 8, 2022, Harding filed the present suit, asserting both breach of contract and extracontractual claims. ECF No. 1. Harding has designated his public adjustor, Cheston Selz, as a non-retained expert in damages, causation, and insurance claims handling.

At some point after the filing of this suit, State Farm retained Bret Barnett, a contractor specializing in roof repairs, to create his own estimate and opine on the parties' divergent repair estimates. Barnett Decl. ¶ 5-6. Barnett found that the actual cash value of the claim was $26,631.52, which is roughly $6,000 more than State Farm's May 2021 estimate. ECF No. 19-6 at 15.[1] However, State Farm has not issued any additional payment.

Now before the Court are State Farm's Motion to Strike Plaintiff's Expert, ECF No. 17, and State Farm's Motion for Summary Judgment, ECF No. 15.

II. **ANALYSIS**

   a. **Motion to Strike**

---

[1] Barnett made edits to his estimate on March 25, 2024. ECF No. 19-6 at 1. His prior estimate found an actual cash value of $25,760.65. ECF No. 16-6 at 28.

State Farm seeks to strike Harding's expert, Cheston Selz, on the basis that (1) he is not qualified to be an expert under Rule 702 and (2) his testimony is unreliable under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

An expert must be minimally qualified by knowledge, skill, experience, training, or education to testify about their subject matter. Fed. R. Evid. 702. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999).

Further, the party offering the expert must show that (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The district court must make a "preliminary assessment of whether that reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology can be applied to the facts at issue." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592-93 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (holding that courts must perform this gatekeeping function with respect to all expert testimony). The goal of this inquire is to "ensure the expert uses reliable methods to reach his opinions." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). The party seeking to introduce the expert testimony has the burden to show the expert's opinions are reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Here, Selz has been offered as an expert in insurance claims handling, causation, and repair costs. Based on the evidence in the record, the Court cannot conclude that he is qualified, nor can it find that his methods are reliable. Off the top, Harding has not provided the Court with Selz's CV or resume. In fact, at his deposition, Selz stated that he didn't have a resume and refused to

4

provide one. Selz Dep. 22:5-21. As a result, the only evidence in the record about Selz's qualifications and methodology is his deposition testimony. However, this provides little clarity. While the Court was able to piece together some background information from his deposition, Selz frequently refused to provide specific information related to his qualifications, experience, or methodology.

It appears Selz began working as a public adjustor in 2020, about a year before he took on Harding's case. Selz Dep. 16:6-9; 46:7-9. Prior to that, Selz was a general contractor. When asked multiple times what kind of contracting work he did, Selz repeatedly refused to answer with any specificity:

> Q: What were you doing before that as far as your career?
> A: Contracting.
> Q: What type of contracting?
> A: General contracting.
> Q: What type of work were you doing?
> A: Construction.
> Q: What type of construction, Mr. Selz? So we're going to assume that the jury doesn't know anything about the contract, general contracting, my background, your background. So what do you mean by that?
> A: Construction on property.
> Q: What type of construction? Were you doing interior damage? Were you replacing roofs? Were you building homes? What were you doing?
> A: General contracting. I mean, general. Building, remodeling, demolition.
> Q: Of residential properties?
> A: Some commercial.
> Q: All right. So when you say, "general contracting," can you explain what your understanding of that term is to the jury?
> A: Construction. Usually when people say that, they mean construction on buildings.
> Q: So are you building new homes?
> A: I have.
> Q: Okay. What is the bulk of your work? What was the bulk of your work before becoming a public adjuster?
> A: Construction and general contracting.

*Id.* at 16:10-17:17. When asked other questions about his background, such as whether he had been arrested in the last ten years or whether he's ever been a party to a lawsuit, Selz outright

5

refused to answer. *Id.* at 9:4-15. Similarly, when asked questions about his history testifying, what documents he reviewed in forming his opinions, and other details of his experience, he repeatedly answered "I don't know how to answer that" or gave vague, obfuscating responses. *See, e.g.*, *id.* 10:3-11:2, 13:14-19, 15:15-25, 20:2-20, 25:25-27:24, 46:17-20, 48:2-6. For example, when asked how he prepared his repair estimate, he was unable or unwilling to provide any details about who, if anyone, inspected Harding's home for damage:

> Q: How did you prepare your estimate?
> A: I had an inspector.
> Q: Who was the inspector that I'm assuming went out to the home?
> A: I don't recall.
> Q: Would that be indicated anywhere within your file?
> A: It doesn't look like it.
> Q: Now, do you have a team of inspectors who assist you in claims like this and then you prepare an estimate?
> A: I have individuals that I have vetted over time.
> Q: How many?
> A: Oh, I don't know.
> Q: Would you say it's more than five?
> A: I would say that I have used more than five.
> Q: All right. And you do not recall who the inspector was that you asked to inspect this home on your behalf?
> A: One of the people that I vetted.
> Q: Okay. And do you recall that gentleman's name?
> A: It doesn't indicate on here.
> Q: Is there any way by telling by the photos taken?
> A: Perhaps.
> Q: Do you have emails between you and this individual related to his inspection and your preparation of the estimate?
> A: I doubt it.

*Id.* 53:16-54:22. In sum, without more information, the court is unable to find that Selz is qualified to provide expert testimony on repairs, causation, or claims handling. Likewise, there is insufficient evidence in the record for the Court to conclude that Selz's methodology is reliable under *Daubert*. State Farm's Motion to Strike is therefore **GRANTED**.

    b. **Motion for Summary Judgment**

6

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

"[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718-19.

### i. Breach of Contract

Harding brings a breach of contract claim arguing that he has not been fully compensated under his insurance policy for home repair costs, water damage remediation expenses, ALE, and personal property damage. State Farm contends that it's entitled to summary judgment because Harding cannot show that there is a covered loss beyond that which State Farm has already compensated. The Court will examine each alleged policy benefit in turn.

7

**Repair costs:** "To prevail on a claim for breach of an insurance policy, a plaintiff must either actually complete repairs or designate an expert witness to opine about the estimated cost of necessary repairs." *Hart v. State Farm Lloyds*, No. 3:22-CV-01367-N, 2024 WL 310539, at *2 (N.D. Tex. Jan. 25, 2024). This general rule follows from the fact lay witnesses cannot testify to the amount of future repair costs. *See Pendarvis v. Am. Bankers Ins. Co. of Fla.*, 354 F. App'x 866, 868-69 (5th Cir. 2009). Harding has not designated any experts aside from Selz, who, as discussed above, may not testify as an expert. There is genuine dispute, however, among State Farm's experts over the cost of repairs. State Farm's May 2021 estimate found that Harding was entitled to $20,211.04 for repairs. Harding was paid in accordance with that estimate. In contrast, the estimate State Farm received from Bret Barnett in 2023 found an actual cash value of $26,631.52, which, if accurate, would mean Harding is entitled to an additional $6,000 payment. The difference in the estimates provided by State Farm's experts is sufficient to create a genuine dispute of material fact as to the precise cost of repairs.[2]

**Mold and water damage remediation:** After Harding received the report from FixAirx describing the mold and water damage to his home, he performed some remediation work. *Id.* at 123:25-124:18. While expert testimony is generally necessary to prove the cost of future repairs, "lay witnesses may properly testify to the work that has been performed on the property thus far." *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 736 (5th Cir. 2010); *Betzel v. State Farm Lloyds,* 480 F.3d 704, 707 (5th Cir. 2007). Thus, Harding's lack of an expert does not preclude him from testifying at trial to the cost of the remediation work he has already completed. While it may be the case that State Farm has already paid the full amount owed to Harding for this

---

[2] That being said, the Court rejects Harding's argument that his sworn proof of loss statement is sufficient to create a genuine dispute over the amount owed under the policy, as expert testimony is necessary to establish the exact cost of repairs that haven't been completed. *See Pendarvis v. Am. Bankers Ins. Co. of Fla.*, 354 F. App'x 866, 868–69 (5th Cir. 2009).

water damage and mold remediation work, State Farm has presented no such argument. Thus, State Farm is not entitled to summary judgment on this issue.

**Personal property replacement and additional living expenses ("ALE")**: Finally, Harding alleges that he is owed compensation for damage to his personal property during the storm. He also argues he is entitled to an ALE reimbursement for the two nights he stayed in a hotel, and compensation for future ALE costs he'll incur when he eventually does the repair work on his house.

Unfortunately, Harding has failed to comply with the insurance policy's requirements to recover these costs. The policy states that the insured has specific duties after filing a claim, including an obligation to "prepare an inventory of damaged or stolen personal property: (1) showing in detail the quantity, description, age, replacement cost, and amount of loss; and (2) attaching all bills, receipts, and related documents that substantiate the figures in the inventory." ECF No. 16-2 at 37. The policy also requires the insured to provide State Farm with "any requested records and documents." *Id.* at 38. Further, it contains a "no action" clause which states, "[n]o action will be brought against us unless there has been compliance with the policy provisions." *Id.* at 48.

"[W]here, as here, the policy contains express language requiring the insured to furnish requested documents, an insurer 'is well within its right to enforce the conditions precedent to coverage [such as] requesting the production of certain documents.'" *Brown v. State Farm Lloyds*, No. CIV.A. V-10-63, 2012 WL 1077668, at *3 (S.D. Tex. Mar. 29, 2012) (quoting *Rossco Holdings, Inc. v. Lexington Ins. Co.*, No. H-09-CV-04047, 2011 WL 1363799, at *4 (S.D. Tex. Apr. 11, 2011)). Unfortunately, Harding has not satisfied conditions precedent to recovery under his policy. In a letter sent on May 1, 2021, State Farm requested Harding provide an invoice of all

9

ALE costs and a list of personal property that had been damaged so that payment could be issued. ECF No. 16-3 at 73. As he admitted during his deposition, Harding still has not provided a list of the items damaged nor any evidence of the cost of the damaged items to State Farm. Harding Dep. 50:21-51:6. In fact, while Harding was able to list some items that he thinks were damaged, he also stated that he didn't have a full list and couldn't provide receipts for those items. *Id.* at 83:15-85:11. Selz likewise did not submit this documentation and has no recollection of what specific items were damaged or what the cost of replacement is. Selz. Dep. 124:10-23. Further, Harding has not furnished any evidence indicating that he submitted the required documentation related to his hotel stay. Because Harding failed to provide the necessary documentation required by the policy, he is unable to proceed with a claim to recover personal property and ALE damages.

### ii. Breach of Duty of Good Faith and Fair Dealing

Breach of duty of good faith and fair dealing requires showing that "the insurer knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). "Evidence that shows only a *bona fide* coverage dispute does not, standing alone, demonstrate bad faith." *Harris v. Allstate Vehicle & Prop. Ins. Co.*, No. CV H-22-3199, 2023 WL 7027518, at *7 (S.D. Tex. Oct. 25, 2023); *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997). Likewise, a "simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994). "However, an insurer's reliance on an expert to deny a claim does not insulate it from liability as a matter of law." *Harris*, 2023 WL 7027518, at *7. An insurer may be liable for bad faith "if there is evidence that the report was not objectively prepared or the insurer's reliance on the report was unreasonable." *Nicolau*, 951 S.W.2d at 448.

There are no facts in the record that suggest bad faith. State Farm sent multiple estimators to assess the damage to Harding's property. State Farm's payment on the claim was based on the reports that those investigations yielded. There is no evidence to suggest that the reports were not objectively prepared or that State Farm's reliance on them was unreasonable.

Although Harding's public adjustor came to a different conclusion about the cost of repairs, a disagreement among experts over the cost of repairs does not by itself suggest bad faith. *See Moriel*, 879 S.W.2d at 17. "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). State Farm is entitled to summary judgment on this claim.

### iii. Deceptive Trade Practices Act ("DTPA")

Harding alleges State Farm violated five provisions of the DTPA[3] because "Defendant represented to Plaintiff that the Policy and Defendant's adjusting and investigative services had characteristics or benefits that they did not have." ECF No. 1-3 ¶ 46.

"In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable" under the DTPA or the Texas Insurance Code. *Moore v. Whitney–Vaky Ins.*

---

[3] Specifically, Harding argues that State Farm violated the DTPA by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not, TEX. BUS. & COM. CODE § 17.45(b)(5); representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another, *id.* § 17.45(b)(7); advertising goods or services with intent not to sell them as advertised and representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, *id.* § 17.45(b)(10), (12); failing to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed, *id.* § 17.45(b)(24); and engaging in an unconscionable action or course of action, to Plaintiff's detriment, that took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree, *id.* § 17.45(5).

11

*Agency*, 966 S.W.2d 690, 692-93 (Tex. App.—San Antonio 1998, no pet.). Harding makes no factual allegations in his pleadings or his briefing to support his assertion that State Farm misrepresented the characteristics of his policy coverage. Nor does he provide any summary judgment evidence that could be reasonably construed as supporting a misrepresentation claim. In fact, in his Response he completely fails to address State Farm's DTPA/misrepresentation arguments. Accordingly, State Farm is entitled to summary judgment on this claim. *See Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 574 (S.D. Tex. 2015) (granting summary judgment on DTPA claims for insurer under analogous circumstances).

### iv. Texas Prompt Payment of Claims Act

The Texas Prompt Payment of Claims Act ("TPPCA") provides for additional damages where an insurer fails to meet certain deadlines in acknowledging, investigating, deciding, or paying a claim. *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813 (Tex. 2019). Harding seems to assert two theories of liability under the TPPCA: (1) State Farm delayed in investigating his claim and (2) State Farm delayed in paying his claim.

**Delay in investigating:** Within 15 days of receiving notice of the claim, an insurer must "(1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." TEX. INS. CODE § 542.055. Harding contends that State Farm did not comply with the second and third requirement.

The claim was filed on February 18, 2021. State Farm acknowledged receipt of the claim the same day. State Farm began investigating the claim six days later on February 24, 2021, when it called Harding to gather information about the claim. *See Texas Friends Chabad-Lubavitch, Inc. v. Nova Cas. Co.*, 539 F. Supp. 3d 669, 680 (S.D. Tex. 2021); *Olschwanger v. State Farm Lloyds*,

No. 419CV00933SDJCAN, 2021 WL 3877689, at *11 (E.D. Tex. July 30, 2021), *report and recommendation adopted*, No. 4:19-CV-933-SDJ, 2021 WL 3858061 (E.D. Tex. Aug. 30, 2021). While State Farm did not send an investigator to Harding's home until March 21, 2021, it commenced its investigation within the prescribed 15 day period. Further, Harding has made no allegations and provided no evidence to suggest State Farm failed to make a request for all the documentation that it believed was necessary within the statute's timeframe. Because Harding fails to provide any evidence indicating State Farm delayed in investigating his claim, State Farm is entitled to summary judgment on this issue.

**Delay in payment:** An insurer must issue payment on a meritorious claim within 60 days of receiving all items, statements, and forms reasonably requested. TEX. INS. CODE § 542.058(a). Functionally, this means that if the insurer is found liable under the insurance policy, the insured can also recover statutory damages under the TPPCA. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. 2003). This is true even if the insurer had a reasonable basis for denying coverage or for issuing partial payment. *Id.*; *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 658 (Tex. 2021). Thus, an insurer is liable for delayed payment under the TPPCA if "the requisite time has passed and the insurer was ultimately found liable for the [insurance] claim." *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813 (Tex. 2019). As stated above in the context of Harding's breach of contract claim, there is a genuine dispute of fact as to whether State Farm paid the full amount owed under the policy. Thus, there is also a genuine dispute of fact as to whether State Farm is liable for delaying payment on Harding's insurance claim.

    v.   **Chapter 541 Claims**

Next Harding alleges violations of Texas Insurance Code §§ 541.060, 541.061. None is meritorious.

**Misrepresenting a material fact or policy provision relating to the coverage at issue**. TEX. INS. CODE §541.060 (a)(1). Harding has identified no specific material misrepresentations State Farm made either in his Complaint or in his Response. "In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable" under the DTPA or the Insurance Code. *Moore v. Whitney–Vaky Ins. Agency*, 966 S.W.2d 690, 692-93 (Tex. App.—San Antonio 1998, no pet.).

**Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim with respect to which the insurer's liability had become reasonably clear.** TEX. INS. CODE §541.060 (a)(2)(A). As stated above in the context of Harding's bad faith claim, State Farm has a reasonable basis for concluding that it has adequately paid Harding under the policy. Harding has not provided any contrary evidence.

**Failing to promptly provide a reasonable explanation of the basis in the policy, in relation to the facts and applicable law, for denial of the claim and/or offer of a compromise settlement of the claim.** TEX. INS. CODE §541.060(a)(3). State Farm promptly provided a reasonable explanation of its determination on Harding's claim. Harding has failed to identify any evidence to the contrary.

**Refusing to pay the amounts duly owed regarding the claim without conducting a reasonable investigation with respect to the claim.** TEX. INS. CODE §541.060(a)(7). As stated above in the context of Harding's other extracontractual claims, State Farm has shown that it has

conducted a reasonable investigation into the claim. Harding hasn't provided any arguments or evidence to the contrary.

**Section 541.061 claims**. Harding also alleges State Farm made material misrepresentations related to his insurance policy under various parts of Section 541.061.[4] Harding has provided no allegations or evidence of any misrepresentations State Farm made.

Accordingly, State Farm is entitled to summary judgment on all of Harding's claims under Chapter 541 of the Texas Insurance Code.

### c. State Farm's Hearsay Objections

State Farm has objected to several piece of evidence Harding proffered on summary judgment. Specifically, State Farm contends that (1) Cheston Selz's written estimate and photographs, (2) the written report by FixAirx, and (3) Brett Barnett's supplemental estimate are inadmissible hearsay under Federal Rule of Evidence 802 and should not be considered on summary judgment.

"At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017). Rather, "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting FED. R. CIV. P. 56(c)(2)). "Thus, the rule expressly contemplates that affidavits are only one way to 'support' a fact; 'documents . . . declarations, [and] other materials' are also supportive of facts. *Lee v. Offshore Logistical & Transp., L.L.C.*,

---

[4] These include allegations that State Farm misrepresented the nature of the policy by making an untrue statement of material fact, TEX. INS. CODE § 541.061(1); failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made, *id.* § 541.061(2); making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, *id.* § 541.061(3); and making a material misstatement of law, *id.* § 541.061(A)(1), (2), (3) & (4).

859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) (quoting Fed. R. Civ. P. 56(c)(1)(A)). "This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record." *Maurer*, 870 F.3d at 384.

The objection related to Selz's report is moot insofar as the Court has stricken him as an expert. Further, because the Court does not rely on the substance of the FixIt Report for any of its summary judgment findings, that objection is likewise moot.

As for Barnett's supplemental estimate, State Farm's objection is somewhat peculiar, as Barnett is State Farm's own expert. In fact, State Farm itself submitted a previous version of Barnett's estimate as an exhibit to its Motion for Summary Judgment. ECF No. 16-6. The only difference between the two versions is Harding's includes a couple of minor modifications Barnett made to his estimate on March 25, 2024. *Compare* ECF No. 19-6 (revised estimate) *with* ECF No. 16-6 (original estimate). In any case, Barnett will be able to testify to the contents of his estimate at trial, and thus it may be considered on summary judgment. *See Lee*, 859 F.3d at 355; *In re Hilcorp Energy Co.*, No. CV 22-2686, 2023 WL 8558078, at *3 (E.D. La. Dec. 11, 2023).

### III. CONCLUSION

State Farm's Motion to Strike Plaintiff's Expert is **GRANTED**. State Farm's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. All claims except for (1) Harding's breach of contract claims for repair and water remediation costs and (2) Harding's TTPCA delayed payment claim are dismissed.

**IT IS SO ORDERED.**

Signed at Houston, Texas on May 7, 2024.

_____
Keith P. Ellison
United States District Judge